UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:06CV-00014-EHJ

JOAN E. McGUIRE PLAINTIFF

VS.

JO ANNE B. BARNHART,
Commissioner of Social Security DEFENDANT

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION**

BACKGROUND

Before the Court is the complaint (DN 1) of Joan E. McGuire ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). Both the plaintiff (DN 9) and the defendant (DN 10) have filed a Fact and Law Summary.

The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 5) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. 28 U.S.C. Section 636(b)(1)(B). By Order entered January 25, 2005 (DN 5), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

On May 31, 2001, plaintiff protectively filed applications for Disability Insurance Benefits and Supplement Security Income payments (Tr. 29, 123-125,). Plaintiff alleged that she

became disabled on November 15, 2000 as a result of degenerative disc disease, irregular heartbeat, and swelling of the legs and ankles (Tr. 30, 203). Administrative Law Judge Marsha Stroup ("ALJ") conducted a hearing on June 5, 2003 in Evansville, Indiana (Tr. 29, 38). The plaintiff was present and represented by attorney Robert Francis. Also present and testifying was Thomas Upton, Ph.D., as a vocational expert (Tr. 29, 38).

In a decision dated September 15, 2003, the ALJ found from the medical evidence that plaintiff's obesity, degenerative disc disease, internal derangement of the knee, atrial fibrillation, and depressive disorder are "severe" impairments within the meaning of the Regulations (Tr. 32). The ALJ found these "severe" impairments do not meet or medically equal one of the impairments listed in Appendix 1 (Tr. 32).

In assessing the credibility of plaintiff's statements the ALJ commented as follows:

> "While the claimant does have a number of verifiable medical problems, I find her testimony regarding the severity of her symptoms to be exaggerated. Many of her complaints can be expected given the nature of her impairments. However, I note that although the claimant is alleging severe back pain at an eight on a scale of zero to ten, she takes only over-the-counter medications. The clamant is presently performing work which is at the light exertional level. Although this work is part-time, it is an indication that she would be capable of working at less strenuous work. I must note that although the clamant told her psychologist at her assessment at RiverValley that she had been unemployed since June 2002, her pay stubs from McDonald's show steady employment through August 2002. The claimant then took a four month break..."

(Tr. 33). The ALJ found that plaintiff has the residual functional capacity to lift and carry five pounds frequently and ten pounds occasionally; sit at least six hours per eight hour day and stand/walk two hours per eight hour day; she should not climb stairs or perform repetitive bending or twisting; and she can perform unskilled work only (Tr. 33-34).

After considering testimony from the vocational expert, the ALJ concluded plaintiff cannot perform her past relevant work (Tr. 34). After considering the vocational expert's testimony as well as plaintiff's age, education and lack of transferrable skills, the ALJ found that plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 34-35). Therefore, the ALJ concluded plaintiff is not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (Tr. 35). The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 22-24).

CONCLUSIONS OF LAW

The Social Security Act ("Act") authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, ___ U.S. ___, 122 S.Ct. 1265, 1267-1268 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. Sections 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

> 2) Does the claimant have an impairment or combination of impairments that significantly limits his or her ability to do basic work activities?
>
> 3) Does the claimant have an impairment that satisfies the duration requirement and meets or medically equals the criteria of a listed impairment within Appendix 1?
>
> 4) Does the claimant have the residual functional capacity to return to his or her past relevant work?
>
> 5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 22-24). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); See 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Serv's., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Serv's., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" exists if a "reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serv's., 987 F.2d 1230, 1233 (6th Cir. 1993) (citing Smith v. Secretary of Health and Human Serv's., 893 F.2d 106, 108 (6th Cir. 1989))). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve

conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Serv's., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

At the third step in the sequential evaluation process, the ALJ found that plaintiff's severe impairments are not severe enough to meet or medically equal one of the impairments listed in Appendix 1 (Tr. 32). Plaintiff disagrees with this finding because she believes her combined impairments would equal at least two musculoskeletal listings when considered "collectively with her severe morbid obesity, legs swelling, back and leg pain and foot spurs" (DN 9). However, she has not identified the two musculoskeletal listings and she has not explained why she medically equals these listings in Appendix 1 (DN 9). Therefore, plaintiff has not sustained her burden of demonstrating that her combined impairments medically equal a listing or listings in Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d); Burgess v. Secretary of Health and Human Services, 835 F.2d 139, 140 (6th Cir. 1987).

At the fourth step in the sequential evaluation process, the ALJ made findings regarding the weight assigned to medical source statements in the record[1], plaintiff's credibility[2], her residual functional capacity[3], the physical and mental demands of her past relevant work, and

---

[1]20 C.F.R. §§ 404.1527(d), 416.927(d).

[2]In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p.

[3]The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a),

her ability to return to her past relevant work (Tr. 32-34). Plaintiff disagrees with some of the findings the ALJ made at this step in the sequential evaluation process (DN 9).

The administrative decision indicates the ALJ carefully considered all of the medical opinions in the record regarding the severity of plaintiff's impairments (Tr. 35, Finding 6). Although plaintiff disagrees with this finding, she has not identified the medical opinions and medical evidence that the ALJ allegedly failed to properly consider. Plaintiff also contends the ALJ failed to consider the combined effects of her impairments (DN 9). However, a thorough review of the administrative decision indicates that the ALJ did consider the combined effects of plaintiff's impairments (Tr. 30-36).

In assessing plaintiff's credibility the ALJ complied with the two-part test set forth in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986). More specifically, the ALJ determined that plaintiff had a number of verifiable medical conditions (Tr. 33). Id. Next, the ALJ found the objective medical evidence did not confirm the severity of the alleged pain and other symptoms arising from these medical conditions (Tr. 33). Id. The ALJ then considered other information and factors that may be relevant to assessing the credibility of plaintiff's subjective statements regarding these verifiable medical conditions (Tr. 33). Id.; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Social Security Ruling 96-7p. For example, the ALJ considered plaintiff's level of daily activity. 20 C.F.R. §§ 404.1529(c)(3)(I), 416.929(c)(3)(I); Social Security Ruling 96-7p; Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993). The ALJ also considered whether there are any inconsistencies in the evidence and the extent to which there are conflicts between plaintiff's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4),

---

416.946.

416.929(c)(4); Social Security Ruling 96-7p. Additionally, the ALJ considered the medication plaintiff was using to alleviate the pain and other symptoms alleged by plaintiff. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); Social Security Ruling 96-7p.

Plaintiff is correct, Social Security Ruling 96-7p does indicate that a claimant's expressed inability to afford treatment and medication should be considered when assessing the claimant's credibility regarding the severity of his or her symptoms. Here, plaintiff testified about her limited financial circumstances and several thousand dollars in outstanding medical bills (Tr. 48-49). She did not, however, indicate this is the reason why she is taking over-the-counter pain medicine (Tr. 50-51). Instead, she testified, "I've just been buying over-the-counter drugs as of now, because they would not give me any more pain medication because they said it's --" (Tr. 50). While the transcript of her testimony is not complete, there is enough to conclude that her doctors stopped prescribing pain medication to her. Thus, there is no factual basis for plaintiff's contention that the ALJ failed to follow Social Security Ruling 96-7p.

Since tolerance of pain is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the plaintiff, the conclusion of the ALJ, who had the opportunity to observe plaintiff's demeanor, "should not be discharged lightly." Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984) (citation omitted). The undersigned concludes that the ALJ's findings regarding plaintiff's credibility are supported by substantial evidence and fully comport with applicable law.

Plaintiff disagrees with the ALJ's finding that she has the residual functional capacity to lift ten pounds occasionally, sit at least six hours per eight hour day and stand/walk two hours per eight hour day (DN 9). However, she has not explained why she disagrees with the exertional and

non-exertional limitations regarding her physical impairments (DN 9). Nor has she demonstrated these findings are not supported by substantial evidence in the record. Therefore, the undersigned concludes plaintiff's disagreement with these findings are without merit.

Plaintiff disagrees with the ALJ's finding regarding functional limitations imposed by her mental impairment (DN 9). Plaintiff reasons since she is already limited to performing unskilled work by virtue of her education and lack of transferrable skills the ALJ's finding that her mental impairment functionally limits her to performing unskilled work does not comport with applicable law (DN 9). See Edwards v. Commissioner, 383 F.Supp.2d 920 (E.D., Mich. 2005); Bielat v. Commissioner, 267 F.Supp.2d 698 (E.D., Mich. 2003); Walker v. Commissioner, 258 F.Supp.2d 693 (E.D., Mich. 2003); Social Security Ruling 85-15.

Plaintiff's reliance on Social Security Ruling 85-15 is misplaced because it is expressly limited to cases involving the evaluation of solely non-exertional impairments. Here, the ALJ found plaintiff has exertional and non-exertional impairments. The applicable law, set forth at 20 C.F.R. §§ 404.1545(c) and 416.945(c), reads as follows:

> "*Mental abilities*. When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work."

The administrative decision in relevant part reads as follows:

> "Mentally, I find the claimant has moderate impairment of her activities of daily living. She has mild impairment of social functioning, as she has reported no difficulties getting along with co-workers or supervisors. Her present work requires frequent social

> interaction. I find she has mild impairment of concentration, persistence, or pace, as a psychiatric evaluation showed her to be cognitively intact. There is no evidence of any episode of decompensation in the record, and no evidence the clamant has ever met the Part C criteria of a listed mental impairment..."

(Tr. 32). The residual functional capacity finding that addresses plaintiff's mental impairment reads "can perform unskilled work only" (Tr. 33-34).

In Edwards, 383 F.Supp.2d at 930-931, the Administrative Law Judge found a "moderate limitation" on the claimant's concentration, persistence, or pace; in Bielat, 267 F.Supp.2d at 700-702, the Administrative Law Judge found a "marked" limitation on concentration, persistence or pace. In both cases the district court concluded the Administrative Law Judge's hypothetical question limiting the claimant to "unskilled" jobs did not adequately address moderate or more severe limitations on concentration, persistence or pace. Edwards, 383 F.Supp.2d at 930-931; Bielat, 267 F.Supp.2d at 700-702. The circumstances here are factually distinguishable because the ALJ found plaintiff has a "mild" limitation on concentration, persistence or pace (Tr. 32). Further, here the ALJ relied on plaintiff's ongoing part-time work at McDonald's to support her finding that unskilled work would adequately address the limitations imposed by plaintiff's mental impairment (Tr. 32).

In Walker, the Administrative Law Judge found the claimant had an adjustment disorder with depressed mood but concluded it would not significantly compromise the claimant's ability to perform a range of sedentary work. 258 F.Supp.2d at 700. The district court concluded the residual functional capacity assessment was not flawed simply because the Administrative Law Judge did not specifically cite to the claimant's depressive disorder. Id. However, it did find this mental condition should have been referenced in the hypothetical question to the vocational expert.

Id. at 701. The district court concluded the Administrative Law Judge's omission was reversible error because it called into question the reliability of the vocational expert's testimony that the claimant could perform other work in the national economy. Id.

The circumstances here are distinguishable from those in Walker because plaintiff's ongoing part-time work at McDonald's supports the ALJ's residual functional capacity finding that unskilled work adequately addresses the limitations imposed by plaintiff's mental impairment. Notably, plaintiff testified the limitations imposed by her physical impairments, not her mental impairments, prevented her from working more consistently and on a full-time basis at McDonald's (Tr. 44-48). In sum, while the hypothetical question should have referenced plaintiff's depressive disorder, the omission is harmless in light of the evidence in the record demonstrating plaintiff's ability to sustain part-time unskilled work at McDonald's and the vocational expert's knowledge of this at the time he rendered his opinion (Tr. 71, 72-74).

Plaintiff's remaining arguments concern findings that the ALJ made at the fifth step in the sequential evaluation process (DN 9). At the fifth step, the Commissioner has the burden of demonstrating there exists a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g); Allen v.Califano, 613 F.2d 139, 145 (6th Cir. 1980); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680-684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). The Commissioner may meet this burden by relying on testimony of a vocational expert provided the expert's testimony is based on a hypothetical question that accurately portrays the limitations imposed by the claimant's physical and mental impairments. Born v. Secretary of Health and Human Services, 923 F.2d 1168, 1174

(6th Cir. 1990); Davis v. Secretary of Health and Human Services, 915 F.2d 186, 189 (6th Cir. 1990); Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).

First, plaintiff disagrees with the ALJ's finding that she has a high school education (DN 9; Tr. 36, Finding 10). During the administrative hearing the ALJ asked plaintiff how far she got in school (Tr. 43). Plaintiff responded "12th" (Tr. 43). In response to the ALJ's next question plaintiff confirmed that she did graduate from high school (Tr. 43). Plaintiff also advised the Administrative Law Judge that she attended classes for six months and obtained her CNA certification (Tr. 43). Clearly, plaintiff's own testimony provides substantial evidence to support the ALJ's finding that she has a high school education (Tr. 36). Plaintiff argues that her application for disability benefits reflects a tenth grade education and no GED or high school diploma equivalent (DN 9). The undersigned has carefully reviewed plaintiff's application for disability insurance benefits and notes it does not set forth information about her education (Tr. 123-125). A disability report plaintiff filled out at the time she applied for benefits does indicate the highest grade of school completed is eleventh grade (Tr. 209). Notably, on this form plaintiff also indicated she has not completed any type of special job training, trade or vocational schooling (Tr. 209).

Certainly, there is a conflict between the information plaintiff set forth in the disability report and what she testified to during the administrative hearing. However, plaintiff's testimony during the administrative hearing appears to provide more accurate information regarding whether she completed high school and whether she has any specialized training. For this reason, the undersigned concludes the ALJ's finding that plaintiff has a high school education is supported by substantial evidence in the record and fully comports with applicable law. Additionally, the failure to mention in the administrative decision that there was such a conflict in the evidence is

harmless error.

Next, plaintiff argues since the hypothetical question to the vocational expert did not accurately reflect the limitations imposed by her physical and mental impairments the vocational expert's testimony cannot constitute substantial evidence (DN 9). More specifically, as to limitations imposed by her physical impairments, plaintiff points out the hypothetical question included a limitation "no repetitive stairs" which differs from the limitation "should not climb stairs" in the ALJ's residual functional capacity finding (DN 9; Tr. 36, Finding 7). Plaintiff argues the latter amounts to "no stair climbing at all" (DN 9, Memorandum at Page 9). The undersigned disagrees.

The limitation "should not" is less restrictive than "no stair climbing at all." More importantly, it is different and appears to be more restrictive than the limitation "no repetitive stairs" in the hypothetical question. This of course begs the question, is the error harmless? Neither the memoranda of the parties nor the evidence in the record indicates the limitation "should not climb stairs" would have reduced the number of the jobs identified by the vocational expert. For this reason, the undersigned concludes the error is harmless.

Next, plaintiff argues that the limitation "unskilled level work" in the hypothetical question does not comport with applicable law (DN 9). For the reasons set forth above there is no merit to her argument.

Finally, plaintiff challenges the testimony of the vocational expert by arguing it is too broad to be evaluated (DN 9). More specifically, plaintiff argues that the vocational expert offered "job categories" rather than specific individual jobs with *Dictionary of Occupational Title* ("DOT") codes and, as a result, it is not possible to determine whether the vocational expert's testimony

comports with Social Security Ruling 00-4p and determine whether a significant number of specific jobs actually exist (DN 9). Notably, during the administrative hearing plaintiff did not bring this issue to the attention of the ALJ or the vocational expert.

The vocational expert testified there were a number of jobs that fit the parameters of the hypothetical question posed by the ALJ (Tr. 72). Examples included unskilled light level assembly work with approximately 30,800 jobs and at the sedentary level approximately 6,700 jobs within a two hundred mile radius (Tr. 72-73). The vocational expert also testified that at the light unskilled level there were approximately 11,000 production inspector positions and at the sedentary level approximately 1,500 positions within a two hundred mile radius (Tr. 73). Lastly, the vocational expert indicated there were approximately 38,000 cashier jobs at the light level and 14,000 at the sedentary level within a two hundred mile radius (Tr. 73). While the ALJ should have asked the vocational expert about any possible conflict between the vocational expert's testimony and information provided in the DOT, plaintiff has not demonstrated she has been harmed by this omission. Therefore, the undersigned concludes the error was harmless. Furthermore, since the vocational expert was able to identify a significant number of jobs that plaintiff could perform, the undersigned concludes that the Commissioner satisfied her burden at the fifth step. Blacha v. Secretary of Health and Human Services, 823 F.2d 922, 928 (6th Cir. 1987).

RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for

the Commissioner.

October 30, 2006

**E. Robert Goebel**
**United States Magistrate Judge**

NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be mailed to all parties. Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be filed within ten (10) days or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984). Counsel will please forward a copy of any objections to the undersigned Magistrate Judge at 126 United States Courthouse, 423 Frederica Street, Owensboro, Kentucky, 42301.

**E. Robert Goebel**
**United States Magistrate Judge**

October 30, 2006

Copies: Counsel